**Wendie B. NILSON, Plaintiff and Respondent,**

v.

**Robert E. NILSON, Defendant and Appellant.**

**No. 17701.**

Supreme Court of Utah.

Aug. 23, 1982.

David S. Dolowitz of Parsons, Behle & Latimer, Salt Lake City, for defendant and appellant.

James R. Brown of Jardine, Linehaugh, Brown & Dunn, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant-appellant Robert Nilson seeks reversal of that part of a divorce decree which awarded custody of his two minor sons to their mother, Wendie Nilson, the plaintiff-respondent. He contends that the trial court disregarded the overwhelming weight of the evidence and awarded custody of his sons in contravention of their best interests.

The custody of the sons, ages seven and one-half years and three and one-half years at the time of trial, was awarded to the mother apparently based upon the findings of the trial court that the mother's staying home appeared to be of "some substantial benefit to the children" who were "of young and tender ages," and that there was a "psychological risk in removing the children from their present home." The court also found that the older boy "expressed the need to maintain his relationship with the family unit, including ... [an older half-sister, the mother's child by a former marriage]." No other finding directly supported the award of custody to the mother.

A psychologist testified that both parents were probably adequate in terms of the

children's development. His report did not recommend one parent over the other. An evaluator appointed by the court, a social worker, observed that the father was the healthier and the more giving parent and recommended that he be granted immediate custody of the boys. In spite of a psychological risk to the children mentioned earlier, a counselor who also had been appointed by the court and who had worked with both parties, occurred in the recommendation favoring the father even though he recognized deficits in both parents that had contributed to making the children unhappy and insecure. In a letter report which discussed the mother's depressive illness after the birth of her youngest child, a psychiatrist found "no evidence for a bipolar illness [manic-depressive disorder]," but did believe "she has some fairly serious impairments in her personality development." Bonding had occurred between the children and both parents. The court's finding regarding the expert testimony was that "[t]he opinions of the expert witnesses were less than definitive in this instance, particularly given the circumstances of the case."

A Sunday school teacher and the bishop of the church which the family attended also testified. The teacher had noticed what she thought was somewhat withdrawn behavior in one of the boys on occasion and had observed the mother's anger at the father in church when he had come to see a program in which the boy was to participate. The boy sat with his father instead of participating in the program. The teacher also said that during the marriage she, at times, had seen the father playing with the children after work. The bishop thought that the children were insecure because of their poor home life and that the father would be the better custodial parent. The bishop had observed a decrease in church attendance of the children since the father was no longer in the home. The court found the conclusions of these witnesses to be "grounded on less than substantial evidence."

The findings do not so state, but the record indicates, that during the last few years of the marriage the father worked many hours and consequently did not spend long periods of time with the children. However, he sent his wife and her daughter on a European vacation and kept and cared for the boys during the several weeks they were away travelling. He testified that he developed a close relationship with his sons during that time. He also testified that he sought custody of the children because he thought it would be in their best interests. The mother testified that she believed she was a fit and proper person to care for the children.

In *Lembach v. Cox,* Utah, 639 P.2d 197 (1981) we reconfirmed that the best interests of the child should be given primary consideration in the award of custody. We continued to recognize a judicial preference for the mother in child custody matters where all other things are equal. However, we noted in that case that all other things were not equal, the scales being tipped in favor of the mother.

■ The father in the case before us asserts that the trial court has disregarded the overwhelming weight of the evidence and relied upon a presumption that the children should be in the care of the mother. According to the rule as explained in Lembach, however, a judicial preference for the mother could become operative only if the evidence was that all other things were equal between the parents. Neither the findings nor the record suggest all things were equal in this case. There was no basis for nor use of a judicial preference for the mother here. Consequently, the issue before us is whether the evidence supports the trial court's determination that the best interests of the children are served by awarding custody of them to the mother.

■ Broad discretion is given a trial court in these matters. *Rice v. Rice,* Utah, 564 P.2d 305 (1977); *Stuber v. Stuber,* 121 Utah 632, 244 P.2d 650 (1952). Only where the trial court action is so flagrantly unjust as to constitute an abuse of discretion does this Court overrule it. *Jorgensen v. Jorgensen,* Utah, 599 P.2d 510 (1979). While we recognize that our task is to do equity, this Court is reluctant to reconsider evidence that a trial court is in an advantaged

position to weigh. Our removal from the participants in a trial puts us in the disadvantaged position of reviewing testimony from a cold record. On review, we cannot judge the intonation of voice, or the manner and demeanor of witnesses as the trial judge is able to do.

■ Our task is made more difficult in this case because the findings of fact are terse in their treatment of two areas of the evidence. Cf. *Tuckey v. Tuckey,* Utah, 649 P.2d 88, (1982) where findings were insufficient to establish critical determinative facts and the order of custody was set aside. The court's finding regarding the expert testimony that "the opinions of the expert witnesses were less than definitive in this instance, particularly given the circumstances of the case[,]" offers us little insight into the extent of the trial court's consideration and its reasons for dismissal of the expert testimony. The findings that the bishop's and Sunday school teacher's testimony was "grounded on less than substantial evidence" indicate only the weight accorded the testimony by the trial court. In short, these findings are not as helpful to us as they could be as we review the record to ascertain the basis for the judgment made below.

However, the findings do suggest the weight accorded the testimony of the various witnesses and outline the basis of the award of custody of the sons to the mother. The mother's staying home with the young children, the psychological risk in removing the children from the home of their mother, the older boy's expression of a need to maintain his relationship with the family unit, including an older half-sister, and the contribution by both parents to the children's unhappiness and insecurity are findings which indicate factors the court relied on in determining the appropriate award of custody according to the best interests of the children. While more explicit reasons for the rejection of expert recommendations and the church leaders' testimony would have been of assistance to us, in view of the aforementioned explanatory findings, their absence does not render the findings fatally inadequate.

Consequently, in view of the findings and with respect for the advantaged position of the trial judge who listened to the family members and observed their inter-relationships, we hold that there was competent evidence upon which to have awarded custody of the children to the mother.

A significant amount of evidence favored an award of custody to the father as well. However, from our position of a reviewing court which has examined the record and findings, we cannot in good conscience conclude that the award of custody to the mother in this case was "so flagrantly unjust as to constitute an abuse of discretion." *Jorgensen v. Jorgensen,* supra.

Affirmed. No costs awarded.

HALL, C.J., and OAKS and DURHAM, JJ., concur.

STEWART, J., concurs in the result.